GREELY JARVIS

*v.*

PENNSYLVANIA CASUALTY COMPANY

(No. 9846)

Submitted September 10, 1946. Decided November 12, 1946.

*William S. Ryan,* for plaintiff in error.

*Harper & Baker,* for defendant in error.

RILEY, JUDGE:

Greely Jarvis brought this action of assumpsit in the Circuit Court of Roane County against Pennsylvania Casualty Company, a corporation, for the recovery of two hundred dollars under the terms of a family hospital and surgical operation indemnity policy of insurance. The jury returned a verdict for one hundred eighty-seven dollars, set out in the "State of Account". To a judgment entered on the verdict, the defendant prosecutes error.

In view of the issues raised by the pleadings it becomes necessary at the outset to make reference to a number of the provisions of the policy.

The policy, dated September 21, 1943, provides for the period from September 21, 1943, to November 1, 1943, at an initial premium of $4.50, and was issued, according to Section (k) of "ADDITIONAL PROVISIONS" of the policy, "in consideration of an application for insurance, a copy of which is endorsed hereon and made a part hereof." This same section also provides that "Upon the expiration of the original term, or any subsequent term

for which this policy may have been renewed, the Insured may, at the option of the Company, renew the policy for a term of twelve months by the payment of an annual premium, * * * for a term of three months by the payment of a quarterly premium * * *." In the "insuring" clause the company agreed to "insure Greely Jarvis and each person named and described as 'Member' in the copy of the application endorsed hereon [including wife] subject to all provisions and limitations hereinafter contained against (1) loss due to expenses incurred * * * (b) * * * from disease the cause of which originates more than thirty days after the date of issue of this policy and causes loss beginning while this policy is in force * * *". Under "STANDARD PROVISIONS": "2. * * * No agent has authority to change this policy or to waive any of its provisions."

The pertinent questions and answers in the application for the policy, read as follows: "17. Have you or any listed member ever had: Tonsilitis * * * [eighteen other listed ailments omitted], or any disease of the generative organs, heart, kidney, bladder, brain, lungs, or nervous system? No. 18. Have you or any listed member ever had or been advised to have a surgical operation? No. 19. Have you or any listed member had any sickness or injury or received any medical or surgical advice or treatment within the past two years? No. If yes, give dates, duration, ailment, and name and address of attending Physician or Surgeon: —————. 25. Are you and all members listed above now in good health and entirely free from any mental or physical impairment or deformity? Yes. 26. Do you agree that this application to the Pennsylvania Casualty Company is for a policy to be issued solely and entirely in reliance upon the written answers to the foregoing questions and do you agree that falsity of any answer herein shall bar right to recover hereunder if it materially affects the acceptance of the risk by the Company and that no insurance is effective until this application is approved by the Company and policy issued to and accepted by you while you and the above listed members are in good health and free from

injury and do you agree to notify the Company immediately if you change your occupation or take other insurance. Yes."

The plaintiff filed the usual form of declaration, under Code, 56-4-17. Defendant demurred to the declaration, which demurrer was overruled, and then filed its plea of general issue under the statute and its plea of non-assumpsit. A statement of particulars of defense was filed and prior to hearing defendant filed its amended statement of particulars of defense, setting up in the latter (1) Fraud in the procurement of the policy in that plaintiff knowingly, wilfully and with intent to deceive, falsely and fraudulently answered question 19, in the application, with "No", when, in truth and fact, he should have answered "Yes", and answered question 25 with "Yes", when he should have answered "No", and that by virtue of his assent to question 26, the falsity of either barred his right to recover since, according to defendant, Gladys Jarvis, a member of the family, was not in good health at time of the purported acceptance of the policy; (2) falsity of answers 19 and 25, and effect of 26 (similar to above) ; (3) by virtue of assent to question 26 that no insurance became effective, since between the 17th of September, 1943, and the ———— day of June, 1944, Gladys Jarvis, according to defendant, was not in good health; and (4) under Section (b) of insuring clause, there was no coverage, since, according to defendant, the gall bladder trouble of Gladys Jarvis originated prior to thirty days after the issuance of the policy.

The plaintiff filed what is termed "pleas of estoppel and waiver" to defendant's original and amended statements of particulars of defense setting up the fact that premiums had been accepted by the defendant company continuing said policy in effect after knowledge of the physical condition of Gladys Jarvis, to which defendant's demurrers were overruled.

The insurance was secured, upon application, dated September 17, 1943, through the company's "District

Managers", Kanawha Valley Insurance Agency, Charleston, West Virginia. Mr. M. A. Bird, District Manager for Pennsylvania Casualty Company, countersigned the policy: "M. A. Bird, Authorized Licensed Agent." Bird was also connected with the Kanawha Valley Agency. Premiums were paid ordinarily every three months, according to plaintiff's evidence. One payment receipted for April 5, 1944, paid the policy up through May and June, 1944. And the policy, according to plaintiff, has been continued in effect by payment of subsequent premiums, the last payment having been made in January, 1946.

On April 6, 1944, Mrs. Jarvis went to Dr. Hugh Bailey for a pelvis examination and was referred to the Staats Hospital, Charleston, West Virginia, for further examination. She was admitted to the hospital on April 11, 1944. The physical examination revealed diagnosis of possible gall bladder disease. An x-ray of the gall bladder on April 12, 1944, revealed definite cholelithiasis, with one stone impacted in the cystic duct. The patient was operated on on April 14, and discharged from the hospital on April 28, 1944.

At the time of her admission to the hospital Gladys Jarvis gave a history, as revealed by a letter of Dr. Herbert M. Beddow of Staats Hospital, addressed to Pennsylvania Casualty Company, Kanawha Valley Insurance Agency, and dated May 24, 1944, "of having had some attacks for the last two years or three years of soreness across the abdomen, with soreness last year most of the time, * * * had frequent headaches, spells of cramping in the upper abdomen, soreness and pain, the spells usually lasting one or two days. These attacks were associated with nausea, gaseous distension and belching."

A claim was filed with the "Kanawha Valley Insurance Agency, District Managers," of the defendant company, for reimbursement under the policy and within the coverage. While considering the claim the agency, by a Mr. Maxwell, directed a letter, dated May 12, 1944, to Staats Hospital, requesting a complete record of Mrs.

Jarvis' case. There was attached a letter of authorization, addressed "To Whom It May Concern" and signed by the plaintiff. Upon receipt of information from the hospital, to the effect indicated in the preceding paragraph of this opinion, the District Manager, Mr. Bird, on May 26, 1944, directed a letter to the plaintiff notifying him that liability was denied on the ground of false answers to questions Nos. 17, 18 and 25 of the application and stating: "This bars the right to recovery under the policy in accordance with question 26 of your application."

On the trial it was shown that Gladys Jarvis made out the application for insurance and signed her husband's name thereto with the latter's consent and that the plaintiff, if entitled to prevail, is entitled to be indemnified under the contract to the amount of $187.00.

Mrs. Jarvis testified that she was working every day, both at time of application and acceptance of policy; that she had no occasion to consult a doctor about any trouble prior to her visit to Dr. Hugh Bailey, early in April, 1944. She admitted giving the history to the hospital, set forth in Dr. Beddow's letter, and that she "knew there were times I didn't feel well with them cramps in here, but I never lost a day's work, was in the store doing the work * * * and it don't seem to me if there was anything much the matter with me that I could go ahead like I did, working every day." The witness testified that she had soreness and pain usually lasting one or two days and that these attacks were associated with nausea, gaseous distention and belching and that she knew that when she made the application for the insurance. Dr. Beddow testified that symptoms of the character described by Gladys Jarvis would indicate anything from the gall bladder to the large intestine. Dr. Frank testified that it cannot be stated in any given case how long it would take for gall bladder trouble to develop.

In the appraisal of the issues of fact, presented by the record, we are to be guided by the rule, established in this jurisdiction, that where the insured has made a

*prima facie* case of loss within the coverage provided by the policy, the burden is upon the insurer to prove the affirmative defense that the loss was one for which the insurer is not liable, because it comes within an exception in the policy. *Martin* v. *Mutual Life Insurance Company of New York,* 106 W. Va. 533, pt. 1, syl., 146 S. E. 53. This is accordant to the decided weight of American authority. See 29 Am. Jur., Insurance, Section 1444, Note 10 and cases cited thereunder.

This record, in our opinion, discloses such a state of facts that plaintiff, in the first instance, has made out a *prima facie* case, and the jury would be justified in determining, as it evidently did, that defendant has sustained the burden of proving that plaintiff gave false answers to questions Nos. 19 and 25, with knowledge that the answers were false. We base this premise upon Gladys Jarvis' own testimony and the history which she gave at the Staats Hospital at the time of her examination prior to the operation for removal of her gall bladder. By her answer to question No. 26 she agreed that "falsity of any answer herein shall bar right to recover hereunder if it materially affects the acceptance of the risk by the Company." The application was filled out and plaintiff's name affixed thereto by Gladys Jarvis, acting as plaintiff's agent. Notwithstanding that Gladys Jarvis testified that she did not regard herself as "sick", her testimony and the history which she gave to the hospital clearly indicate that she had actual knowledge that the answers to questions Nos. 19 and 25 were false, and she being plaintiff's agent in the filling out of the application, such knowledge should be imputed to plaintiff. *Buckeye Saw Mfg. Co.* v. *Rutherford,* 65 W. Va. 395, 64 S. E. 444; *Great Eastern Refining Corporation* v. *Shank,* 99 W. Va. 101, 127 S. E. 922. In our opinion, the false answers are material and being untrue with knowledge of their falsity will, in the absence of waiver or estoppel serve to void the policy. In the recent case of *Dye* v. *Pennsylvania Casualty Co.,* 128 W. Va. 112, 35 S. E. 2d 865, this Court in point 1 of the syllabus held: "False statements contained in an application for an indemnity policy that insured is 'now in good health and free from

any mental or physical impairment or deformity,' and that insured had no 'sickness or injury or received any medical or surgical advice or treatment in the past five (5) years,' which statements are known to the insured to be in fact false at the time the application was signed, are material misrepresentations, which in the absence of a waiver or an estoppel will avoid the policy." See also *Bender* v. *Metropolitan Life Insurance Co.*, 117 W. Va. 511, 185 S. E. 907; *Leadman* v. *Aetna Life Insurance Co.*, 112 W. Va. 53, 163 S. E. 716; *Woody* v. *Continental Life Insurance Co.*, 105 W. Va. 215, 141 S. E. 880.

In our opinion, the recovery sought here is covered by the "INSURING CLAUSE" of the policy. The pertinent part of this clause is that the insured and each listed member are insured against: "(1) loss due to expense incurred through hospital residence, use of operating room * * *, surgical expense, * * * resulting from * * * (b) sickness resulting from disease the cause of which originates more than thirty days after the date of issue of this policy and causes loss beginning while this policy is in force * * *." Gladys Jarvis underwent an operation which was the basis of the claimed loss, on April 14, 1944, about six months after the date of the policy. The record does not disclose that she was afflicted with gallstones within the thirty-day period after the issuance of the policy, though it contains, as heretofore suggested, substantial evidence that she was in ill health prior to the date and issuance of the policy, but the only evidence in this case, bearing on the question when she became afflicted with "stones" in her gallbladder, is the testimony of Dr. Frank of the Staats Hospital to the effect that it cannot be determined how long it would take for the development of gallbladder trouble. "Medical science", he testified, "knows a stone can form in a very short time and sometimes they may develop very slowly." The thirty-day provision in the insuring clause, on the basis that an insurance policy is to be construed most favorably to the insured, is in the nature of an exception to the policy, concerning which, under Dr. Frank's testimony, the defendant has failed to sustain the burden of proof.

It is contended by plaintiff that because the letter of May 26, 1944, written by defendant's agent at Charleston to plaintiff, denied liability on the ground that the answers to questions Nos. 17, 18 and 25 of the application were false, it cannot thereafter insist upon the falsity of the answer to question No. 19, which was not specified in the agent's letter. This position might be tenable if prejudice had resulted to claimant from reliance on the statement of the insurer. 29 Am. Jur., Insurance, Section 871, and cases cited under Note 5. Here, however, no prejudice resulted, and, notwithstanding grounds of denial contained in the letter of May 26, 1944, the insured brought this action within due time to recover liability under the policy.

But plaintiff contends that defendant waived the effect of the falsity of the answers in the application by the acceptance of premiums after defendant's letter of denial of liability and knowledge of the falsity of the answers. According to the great weight of authority an insurer which, with knowledge of facts entitling it to treat the policy as void, receives and accepts premiums on the policy, is estoppel to take advantage of the forfeiture. *Bowles* v. *Mutual Ben. Health & Acci. Asso.,* 99 F. 2d 44, 119 A. L. R. 756; *Schwarzbach* v. *Ohio Valley Protective Union,* 25 W. Va. 622, pt. 14 syl.; *Phoenix Mutual Life Insurance Co.* v. *Raddin,* 120 U. S. 183, 30 L.ed. 644, 7 S. Ct. 500; *Home Insurance Co.* v. *Hightower,* 22 F. 2d 882; *Mull* v. *United States Fidelity & Guaranty Co.,* 35 Ida. 393, 206 P. 1048; *Millis* v. *Continental Life Insurance Co.,* 162 Wash. 555, 298 P. 739; *New England Mutual Life Insurance Co.* v. *LeVey,* 264 Mich. 282, 249 N. W. 854. See also numerous cases cited under Note 15, Am. Jur., Insurance, Section 857, and 45 C. J. S., Insurance, Section 716. In the *Bowles* case, which involved misrepresentation in an application for health and accident insurance, the United States Circuit Court of Appeals for the Fourth Circuit held that the ground for forfeiture was waived by the acceptance of premiums, though, as in the case at bar, the premium payment upon which the insured's claim of estoppel was based, was

made both after loss and denial of liability. For like holding see *New England Mutual Life Insurance Co.* v. *LeVey, supra.* The case at bar is to be distinguished from *Holland Laundry* v. *Travelers' Insurance Co.,* 152 N.Y.S. 92, 166 App. Div. 621, affirmed in 221 N. Y. 698, 117 N. E. 1071. In that case the court held that the acceptance of premiums under employer's liability policy, after injury to an employee in the course of his employment, did not preclude insurer from relying on the defense that the loss was not covered by the policy, where the policy covered other employees or risks, and was a continuing obligation. In the *Holland* case, the policy contained an exception as to injuries, "caused or sustained by any person employed by the Assured in violation of law as to age." In that case the exception to the policy simply involved a single person. In the case at bar the representations went to the condition of health of insured and all members of his family designated in the policy. If false as to Gladys Jarvis, as we think the representations were, the whole policy became voidable from the date of issuance, and it would seem to follow that the payment of premium by insured and the acceptance by insurer, after knowledge of the misrepresentations, were a waiver of the entire ground of forfeiture.

In response to the last-mentioned contention defendant invites this Court's attention to Section (k) under the heading "ADDITIONAL PROVISIONS". This section provides, as heretofore stated that: "Upon the expiration of the original term, or any subsequent term for which this policy may have been renewed, the Insured may, at the option of the Company, renew the policy for a term of twelve months by the payment of an annual premium, for a term of six months by the payment of a semi-annual premium, for a term of three months by the payment of a quarterly premium, or for a term of one month by the payment of a monthly premium." The acceptance of the quarterly premium after the letter of denial of liability, defendant contends, was for a new policy for three months. In our opinion, there is involved here a single policy with provisions for a renewal thereof. To

the effect that an insurer's acceptance of a renewal premium on a health and accident policy, after being notified of the existence of a policy subsequently issued to insured, was a waiver of the requirement contained in the policy that insured promptly notify insurer of additional insurance, see *Bowles* v. *Mutual Ben. Health & Acci. Asso., supra,* page 46.

By the acceptance of the policy through the Kanawha Valley Insurance Agency, coupled with defendant's acquiescence in the payment of premiums to that agency on a quarterly basis, the agency was clothed with at least apparent authority to carry out that practice and defendant is bound thereby. In *Medley* v. *German Alliance Ins. Co.,* 55 W. Va. 342, 47 S. E. 101, pt. 1, syl., this Court held: "An insurance company, establishing a local agency, is responsible to the parties with whom the agent transacts business for his acts and declarations within the scope of his employment, and to the extent of the authority apparently conferred upon him by the Company, and a limitation upon such apparent authority, not communicated to the insured before he acted upon the representations or conduct of the agent, will not relieve the company from liability, unless, after discovery of the want of authority in the agent, the insured has precluded himself from the assertion of his rights by *laches.*" See also *Manhattan Life Insurance Co.* v. *Carder,* 82 F. 986, 27 C.C.A. 344, a case arising in the United States District Court for the District of West Virginia; *Southern Life Insurance Co.* v. *McCain,* 96 U. S. 84, 24 L.ed. 653; 29 Am. Jur., Insurance, Section 426 under Note 5; and the cases annotated in *Thompson* v. *Equitable Life Assur. Soc.,* 199 N. C. 59, 154 S. E. 21, 85 A.L.R. 739. Under these authorities, the acceptance of premiums by the Kanawha Valley Insurance Agency, after defendant's knowledge of the falsity of plaintiff's answers in the application, coupled with defendant's silence as to the right of the agency to accept the premiums in these circumstances, amounts to an acquiescence on the defendant's part and serves to estop defendant to assert any right it may have had to avoid the policy.

The judgment of the circuit court is affirmed.

*Affirmed.*