BERTHA ANN MUNDY

*v.*

VICTOR P. ARCURI *and* PHYLLIS P. ARCURI, *his wife*

(No. 14686)

Decided June 17, 1980.

*Herschel Rose, Rose, Southern & Padden,* for appellants.

*Harry R. Cronin, Jr.,* for appellee.

HARSHBARGER, JUSTICE:

On August 5, 1976, Victor and Phyllis Arcuri sold to Bertha Ann Mundy ten acres and twelve poles of real property in Taylor County on which there was a tavern, with fixtures, a pavilion, and a house. The conditional sale contract price was $169,000, of which $25,000 was paid in cash, and the balance was payable in monthly installments of $1,638.78.

Mundy took possession on September 1, 1976, and immediately opened the tavern for business; but a fire gutted it on October 31. Several days after the fire, the Arcuris gave Mundy notice that their contract was terminated because she failed to have adequate fire insurance.

Mundy asked the Arcuris' permission to go on the property and rebuild. She had already obtained ABCC

authority to use the pavilion as a tavern until she could restore the burned building. The Arcuris refused, locked her off the property, and sold some of the fixtures. They received an insurance check for $11,900.00, payable to them and Mundy; it remains uncashed. She sued to get the property, or in the alternative, for refund of the $25,000. The trial court ordered that her money be returned, finding that the Arcuris had waived their right under the contract to require additional fire insurance protection; and they appeal.

The pertinent part of the contract was:

> The buyer shall, beginning on September 1, 1976, pay all taxes and levies made against said property as and when the same become due and shall obtain, maintain, and pay for, adequate fire insurance on the improvements situate on said property in the policy evidencing which shall be written in the name of Victor P. Arcuri and Phyllis P. Arcuri. . . . If the buyer fails or refuses to pay said taxes or insurance premiums, as herein required, such failure shall constitute a default hereunder and be treated and considered the same as though the buyers [sic] had failed or neglected to pay the monthly installments hereunder and sixty (60) days had elapsed thereunder and this contract shall become null and void.

Mundy did not purchase fire insurance for 1976. Her evidence, contradicted by the Arcuris, tended to prove they told her at the contract signing that they had already purchased fire insurance and she would be saved that money for the year. The Arcuris objected that this testimony violated the parol evidence rule.

Prior or contemporaneous statements that contradict clear, unambiguous language of a written contract are inadmissible. *North American Royal Coal Co. v. Mountaineer Developers, Inc.*, 239 S.E.2d 673 (W.Va. 1977), Syllabus Point 1; *Wilkinson v. Searls*, 155 W.Va. 475, 184 S.E.2d 735 (1971); *Kanawha Banking and Trust Co. v. Gilbert*, 131 W.Va. 88, 46 S.E.2d 225 (1947); 17 Am. Jur. 2d

*Contracts* §§260, 261; 32A C.J.S. *Evidence* §998; 4 Williston on Contracts §§631, 639 (3d ed. Jaegger 1961). In addition, there must be evidence of consideration to prove an oral modification of a written contract. *Bischoff v. Francesa*, 133 W.Va. 474, 56 S.E.2d 865 (1949); *Charleston Lumber Co. v. Friedman*, 64 W.Va. 151, 61 S.E. 815 (1908), Syllabus Point 3; 17 Am. Jur. 2d *Contracts* §460; 17A C.J.S. *Contracts* §§376, 377. No evidence of consideration for a modification was introduced.

A problem with appellants' parol evidence argument is that the trial court did not admit the testimony to contradict, alter or modify a written contract, but to prove that the Arcuris waived that contractual provision for 1976. Waiver or estoppel in pais is different from modification. In order to support estoppel or waiver, a party must have been induced to rely on certain facts, and must have done so to his detriment. *Nisbet v. Watson*, 251 S.E.2d 774 (W. Va. 1979), Syllabus Point 3; *Humble Oil & Refining Co. v. Lane*, 152 W.Va. 578, 165 S.E.2d 379 (1969); *Helmick v. Broll*, 150 W.Va. 285, 144 S.E.2d 779 (1965), Syllabus Point 2; 31 C.J.S. *Estoppel* §59; 28 Am. Jur. 2d *Estoppel and Waiver §27*; 5 Williston on Contracts §691.

One who asserts waiver or estoppel has the burden of proving it. *Hoffman v. Wheeling Savings & Loan Ass'n.*, 133 W.Va. 694, 57 S.E.2d 725 (1950); 31 C.J.S. *Estoppel* §160; 28 Am. Jur. 2d *Estoppel and Waiver* §146; 50 A.L.R. 971. Mundy introduced her testimony and the testimony of a friend who was present at the contract signing to prove that the Arcuris made representations upon which she relied to her detriment. She also produced testimony to indicate that the Arcuris did, in fact, maintain the fire insurance, refused to add her name as a beneficiary of the policy, and never suggested that she should purchase any additional insurance for that year.

Cross-examination of Mr. Arcuri disclosed that the amount of coverage was satisfactory to him before the sale:

132

COUNSEL: That total insurance that you said you had on that main building [tavern] on the place was $11,900.00, is that correct?

ARCURI: Approximately.

Q: And your testimony was to the effect that the building was worth $100,000.00, isn't that correct?

A: That is correct.

Q: Did you consider the $11,900.00 adequate for your own purposes?

A: I figure it was, because I owned it, and it didn't make that much difference to me. I owned the property.

Q: Did you ever, after this contract was entered into, in your capacity as her consultant, or in your capacity as the other party, suggest to her that she should increase the insurance on those various buildings on these grounds?

A: No, I did not.

Q: You didn't increase any of them yourself either, did you?

A: I did. I did increase it, the previous year. It was lower than that, and I increased it the next time.

Q: But you had made no increase after this contract was signed?

A: No. No.

Q: So you felt secure in the type of insurance you had on it at that time?

A: That is correct.

The trial court found as fact that on August 31 the Arcuris knew about the fire insurance coverage, but did not complain about it until after the fire. It was too late then for them to object that she did not have enough insurance.

Where a party stands by and sees another who, in good faith, deals with property inconsistent with the first person's interest and that person makes no objection, he is estopped to deny the validity of the action on the part of the second person. . . . *Thaxton v. Beard,* 157 W.Va. 381, 201 S.E.2d 298 (1973), Syllabus Point 2.

Where a party knows his rights or is cognizant of his interest in a particular subject-matter, but takes no steps to enforce the same until the condition of the other party has, in good faith, become so changed, that he cannot be restored to his former state if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. This disadvantage may come from death of parties, loss of evidence, *change of title or condition of the subject-matter,* intervention of equities, or other causes. When a court of equity sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief. *Carter v. Price,* 85 W.Va. 744, 102 S.E. 685 (1920), Syllabus Point 3 (emphasis added).

We will not interfere with a trial court's finding of fact unless it is clearly wrong and against the preponderance of evidence. *Frasher v. Frasher,* 249 S.E.2d 513 (W.Va. 1978); *Mahoney v. Walter,* 157 W.Va. 882, 205 S.E.2d 692 (1974); *McDaniel v. Romano,* 155 W.Va. 875, 190 S.E.2d 8 (1972); *see generally,* West Virginia Rules of Civil Procedure, Rule 52(a).

We affirm its conclusion that the Arcuris waived the contract's fire insurance provision for 1976-77. Also, we affirm that the Arcuris are to return Ms. Mundy's $25,000 down payment and that the contract is rescinded. They keep the insurance money; we assume the trial court considered her installment payments made before

the fire to be equivalent to the reasonable rental value of the property.

There is no need for us to discuss other aspects of the transaction because this disposition determines all matters raised on appeal fairly requiring decision.

*Affirmed.*