396 S.E.2d 181

**Mohammad SHAFI, M.D.**

v.

**ST. FRANCIS HOSPITAL OF CHARLESTON, a Corporation.**

**No. 19421.**

Supreme Court of Appeals of West Virginia.

July 16, 1990.

---

Edward W. Rugeley, Jr., Gale R. Lea, Jackson & Kelly, Louie A. Paterno, Jr., Charleston, for St. Francis Hosp. of Charleston.

Barbara H. Lupton, Jennifer N. Taylor, Hunt & Wilson, Charleston, for Mohammad Shafi, M.D.

PER CURIAM:

The appellee, Mohammad Shafi, M.D., filed suit against the appellant, St. Francis Hospital, on April 16, 1986, alleging that the hospital breached its contract with him by terminating him as Director of the Department of Anesthesiology without good cause. Prior to the trial, the appellant filed a motion in limine seeking to exclude evidence of oral representations made by the hospital's President and Chief Executive Officer, William E. Shirey, to the appellee that the handwritten changes made by the appellee in his 1978 employment contract with the hospital providing that he could only be terminated for cause would be incorporated into his 1982 employment contract. The appellant's motion was denied, and the case was tried by a jury. On August 19, 1988, the jury returned its verdict in favor of the appellee. On appeal, the appellant contends that the judgment must be reversed because the court erred in admitting parol evidence which contradicted the terms of the written employment contract. We agree, and accordingly, we reverse the judgment of the circuit court.

The parties do not dispute the following facts. The appellee is a licensed, board-certified anesthesiologist who was hired by the appellant to be the Director of the Department of Anesthesiology of St. Francis Hospital in July of 1975. At that time, there was no written employment contract between the parties. Subsequently, the Joint Committee on Accreditation of Hospitals (JCAH) began requiring the appellant to have signed contracts with its physician-employees. During its 1978 inspection of the hospital, JCAH asked to review the appellant's physician-employee contracts. To satisfy the JCAH requirements, Wilfred Wright, who was Assistant Senior Vice President of the hospital at that time, sub-

mitted a typewritten employment contract to the appellee, dated July 1, 1978, for his signature.

The 1978 employment contract contained the following termination provision:

> This agreement shall be in force for a period of five years from its effective date and shall be automatically renewed from year to year unless either party gives the other written notice of its intention not to renew at least 60 days prior to its anniversary date. This agreement may be terminated by either party, without cause, giving the other party 90 days written notice of its intention to terminate.

Although the appellee signed the 1978 employment contract, he subsequently modified the termination provision of that contract by marking through the ninety-day termination and coterminous clauses, and substituting those provisions with a clause which provided that the contract could be terminated only by: (1) "reasonable cause established by [an] impartial committee composed of medical staff members, acceptable to both parties"; (2) mutual agreement; and (3) "due process according to [the] by[-]laws of [the] hospital and medical staff." The 1978 contract, however, was never retyped to incorporate the handwritten changes into the contract.

In 1980, the appellee was once again asked to sign another employment contract for an upcoming JCAH inspection at the hospital. The second contract was essentially the same as the original 1978 contract and contained the same termination provisions.[1] Although the appellee did not incorporate handwritten revisions on the 1980 contract as he had done on the 1978 contract, he did sign the 1980 contract with

the notation "contingent on continuation of negotiation" under his signature.

Once again, in 1982, the appellee was asked to sign a third employment contract for another JCAH inspection at the hospital. The 1982 employment contract was the same as the 1978 and 1980 agreements, except that the appellee's monthly salary had been increased to $15,125.07. Furthermore, none of the handwritten changes made by the appellee in the 1978 contract were incorporated into either the 1980 contract or the 1982 contract. The 1982 contract also contained the same termination provisions as the previous two employment contracts that the appellee had entered into with the appellant.[2]

Once the appellee saw that the 1982 contract failed to incorporate the handwritten modifications he had made to the 1978 contract, he discussed the matter with Mr. Shirey. The appellee and Mr. Shirey reviewed the changes of the 1978 contract and the appellee expressed his concerns that these modifications had not been incorporated into the 1982 contract. The appellee signed the 1982 contract and added the notation "contingent on continuation of negotiations regarding some clauses which are unacceptable to me" under his signature. Mr. Shirey signed this contract as well.

In summary, all three employment contracts were essentially the same except that the termination provisions of the 1978 contract were deleted by the appellee and substituted with a clause only allowing the appellee to be terminated for cause. No provisions of the 1980 and 1982 contracts were deleted by the appellee, however, the 1980 contract contained a notation under

---

1. The only difference between the two contracts was that the appellee's monthly salary increased from $5,895.07 to $7,439.36.

2. The 1982 contract also contained the following provision:

    This Agreement constitutes the entire agreement between the parties and contains all the agreements between the parties with respect to the subject matter thereof, specifically replacing and rendering void any and all agreements hitherto entered into between them. The invalidity and unenforceability of any

    particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid and unenforceable provisions were omitted.

    This provision, which was contained in all three contracts, was not modified or deleted by the appellee in the 1978 contract. The appellee testified that the provisions in the 1978 contract which were not "scratched through" were still part of that contract.

the appellee's signature, "contingent on continuation of negotiation," and the 1982 agreement included a similar notation, "contingent on continuation of negotiation regarding some clauses which are unacceptable to me."

Thereafter, the appellant decided to change from a salary to a fee-for-services arrangement. The appellant also decided to replace the appellee as the Director of the Department of Anesthesiology. The appellee left Charleston in February of 1986 and went to Pakistan to care for his father who was ill. During that time, the appellant began negotiations with another physician to replace the appellee. When the appellee returned to the hospital on March 3, 1986, after his father died, the appellee learned of the events that transpired in his absence.

On March 4, 1986, the appellee and Mr. Wright met to discuss whether the appellee was going to accept a new contract on a fee-for-services basis. The appellant terminated the appellee's employment on March 14, 1986.[3] The case was tried by a jury, and the jury returned a verdict in favor of the appellee. The jury awarded the appellee $251,000, which represented the amount of lost wages and benefits claimed under the 1982 contract, and also awarded him $13,000 in interest. The appellant filed a motion with the circuit court for a judgment notwithstanding the verdict, or, in the alternative, for a new trial. The trial court denied this motion, and the appellant filed this appeal.

The key issue in this appeal is whether the trial court erred in admitting parol evidence relating to an alleged oral agreement between the appellee and Mr. Shirey that the handwritten modifications in the 1978 agreement providing that the appellee would only be terminated for cause were incorporated in the 1982 contract.[4] The appellant contends that the testimony of the appellee and Mr. Shirey relating to the alleged oral agreement violated the parol evidence rule and was inadmissible. The appellee argues that the notation under the appellee's signature on the 1982 contract rendered the 1982 contract ambiguous and that parol evidence was therefore admissible.

■ The parol evidence rule generally prohibits the introduction of any extrinsic evidence to vary or contradict the terms of written contracts as we stated in syllabus point 1 of *North American Royal Coal Co. v. Mountaineer Developers, Inc.*, 161 W.Va. 37, 239 S.E.2d 673 (1977):

> 'Extrinsic evidence of statements and declarations of the parties to an unambiguous written contract occurring contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain the terms of such contract, in the absence of a showing of illegality, fraud, duress, mistake or insufficiency of consideration.' Syllabus point 1, *Kanawha Banking and Trust Co. v. Gilbert*, 131 W.Va. 88, 46 S.E.2d 225 (1947).

It is well settled, therefore, that prior or contemporaneous statements that contradict clear, unambiguous language of a written contract are inadmissible. Parol evidence may only be admitted to explain uncertain, incomplete or ambiguous terms. *Glenmark Associates, Inc. v. Americare of West Virginia, Inc.*, 179 W.Va. 632, 371 S.E.2d 353 (1988); *Holiday Plaza, Inc. v.*

---

3. The appellant contends that the appellee was terminated because he was unwilling to accept the contract providing for a fee-for-services arrangement. The appellee, on the other hand, asserts that he was willing to work at the hospital on a fee-for-services basis.

4. We question whether a contract even existed between the parties. As we recognized in *Stark Electric, Inc. v. Huntington Housing Authority*, 180 W.Va. 140, 142, 375 S.E.2d 772, 774 (1988), "[i]t is rather universally accepted that where an offer is made and the person accepting the offer does not do so unequivocally, but conditions his acceptance, then no binding contract arises."

We note, however, that Defendant's Instruction No. 1(a) instructed the jury regarding the "meeting of the minds," and the jury obviously rejected this argument.

Some members of this Court would hold, as a matter of law, that no contract existed between the parties, however, this issue was not extensively discussed in the appellate briefs. The case, therefore, will not be decided on this issue, because it was not the focus of the appeal.

*First Federal Savings and Loan Ass'n of Clarksburg,* 168 W.Va. 356, 285 S.E.2d 131 (1981); *Mundy v. Arcuri,* 165 W.Va. 128, 267 S.E.2d 454 (1980).

 In the instant case, the 1982 contract executed by the parties specifically provides that the "agreement may be terminated by either party, without cause, giving the other party [ninety] days written notice of its intention to terminate." That provision is clear and unambiguous. The appellee, however, was allowed to introduce parol evidence to contradict that provision on the basis of the handwritten notation appearing under the appellee's signature, "contingent upon continuation of negotiation regarding some clauses which are unacceptable to me." The trial court found that this notation rendered the 1982 contract ambiguous.

We do not agree, however, with the trial court's finding that the notation "contingent on continuation of negotiation regarding some clauses which are unacceptable to me" rendered the 1982 agreement ambiguous. That notation indicates that the appellee wanted to renegotiate some of the terms of the contract in the future.[5] Parol evidence could not be introduced to contradict or vary the termination provisions of the 1982 written contract on the basis of that notation. Furthermore, there is no language in the 1982 contract, typed or handwritten, which indicates that the termination provisions of the 1978 agreement were incorporated within that contract.[6] Clearly, the written contract entered into between these parties cannot be varied and a new and different contract substituted by parol evidence. Since we find that the handwritten notation did not render the 1982 contract ambiguous, we conclude that the trial court erred in allowing parol evi-

dence to be admitted which contradicted the terms of that contract.

Thus, for the reasons set forth herein, we conclude that the judgment of the Circuit Court of Kanawha County shall be reversed and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

5. The appellee and Mr. Shirey both testified that there were never any continuing negotiations regarding the 1982 contract after it was signed. All of the discussions between the appellee and the appellant regarding the 1982 contract occurred prior to or contemporaneously with its execution. Moreover, approximately five years and eight months passed from the time the 1980 contract was executed until the appellee was terminated on March 14, 1986, during which

time the appellee could have negotiated the changes he deemed necessary.

6. Clearly, as we recognized in footnote 1, *supra,* the 1982 contract specifically provided that the 1982 agreement contained all the agreements between the parties, "specifically replacing and rendering void any and all agreements hitherto entered into between them."